## LEFFERTS *vs.* DE MOTT & INGERSOLL.

One of several *partners* is a competent witness for his *copartners* in an action against *them* in which *he* is not made a defendant for a debt claimed to be due by the *firm*, if he be *released* by his copartners from all liability for contribution.

The king's bench of England holds that to render such a party competent, it is necessary, *in addition* to the release of his copartners, that he *release* to them his interest in the *surplus* of the assets of the firm as far forth as the same may be affected by the demand in controversy: such release for that purpose is here held unnecessary.

THIS was an action of assumpsit for wheat sold and delivered in October, 1834. The cause was referred, and at the hearing before the referees the plaintiff made out a *prima facie* case by proving a delivery of the wheat at the store house of *De Mott, Ingersoll & Co.*, of which firm the defendants were members.

The defendants called as a witness *Halsey Sandford*, who was a member of the firm of *De Mott, Ingersoll & Co.*, which was dissolved in 1835. Sandford was not made a party defendant. They offered to prove by him that the wheat was not delivered on a sale to De Mott, Ingersoll & Co., though received at their store house; but that it was delivered and received on account of *De Mott & Sandford*, another firm of which the witness was a member with De Mott, the now defendant. *Sandford*, at the request of the plaintiff, was sworn on his *voir dire*, and testified that he was a member of the late firm of *De Mott, Ingersoll & Co.*, and produced a release under seal whereby the defendants jointly and severally released him "from all and every claim and demand which we now have or hereafter may or can have against him, by reason of this suit, and the matters in controversy therein or by reason of any recovery which may occur therein." The plaintiff objected to the competency of Sandford as a witness, and the objection was sustained. He then further testified in his *voir dire*, that the firm of *De Mott, Ingersoll & Co.* had no joint property subject to an execution at law, of which the witness had any

knowledge, and that he had executed a release to *De Mott* and *Ingersoll*, which was produced, whereby he released them "from all and every claim and demand which I now have or hereafter may or can have against them by reason of this suit and the matters in controversy therein, or by reason of any recovery which may occur therein." The plaintiff persevered in his objection, and the witness was rejected by the referees, who reported in favor of the plaintiff. The defendants now move that the report be set aside, and for a rehearing.

*L. H. Sandford*, for the defendants.

*I. Williams*, for the plaintiff.

*By the Court*, COWEN, J. The English rule formerly was, that a partner of the defendants, though omitted as a party, could not be rendered competent by any interchange of releases between him and his copartners, because, should the plaintiff fail to collect the debt of the defendants by reason of their death or insolvency, he might still sue the witness in equity. 1 Phil. Ev. 60, 134, 7th ed. *Cheyne* v. *Koops*, 4 Esp. R. 112. *Simons* v. *Smith*, Ryl. & Mood. N. P. Cas. 29. There is, however, according to our own cases and one in Massachusetts, an end of all claim both at law and in equity against the partner not sued, by a recovery in a separate action against his copartners. *Robertson* v. *Smith*, 18 Johns. R. 459. *Gibbs* v. *Bryant*, 1 Pick. 118. *Penny* v. *Martin*, 4 Johns. Ch. R. 566. This is a general if not an universal rule as to *joint debtors*, and even *joint and several debtors*, who are sued jointly. A judgment against one extinguishes all farther remedy against the other on the original obligation. *Beltshoover* v. *The Commonwealth*, 1 Watts, 126. *Williams* v. *M'Fall*, 1 Serg. & Rawle, 280. *Downey* v. *Farm. & Mech. Bank of Greencastle*, 13 id. 288. See also *Bedell's adm'r* v. *Keethley*, 5 Monroe, 601, and *Vaneman* v. *Herdman*, 3 Watts, 202. Therefore in *Bagley* v. *Osborne*, 2 Wendell, 527, this court held that a release from the defendant to the witness restored his competency. See

also *Willings* v. *Consequa,* 1 Peters' C. C. R. 301, 306, S. P. *Le Roy, Bayard & Co.* v. *Johnson,* 2 Peters' R. 186, S. P. See also *Chapman* v. *Andrews,* 3 Wendell, 240, 243 ; *Ransom* v. *Keyes,* 9 Cowen, 128 ; *Clarkson* v. *Carler,* 3 id. 84; and *Robertson* v. *Mills,* 2 Har. & Gill, 98. The king's bench in the late case of *Wilson* v. *Hirst,* 4 Barn. & Adol. 760, have come to the same result upon similar premises, with the qualification that instead of a single release, viz. from the defendants to the witness, there must be mutual releases, as in the case at bar. Mr. Phillipps, therefore, in his 8th edition, A. D. 1838, 1 vol. p. 153, 4, has recanted his former rule. The English case cited proceeds on the notion that, by a recovery against the defendants, the *surplus* of the witness on winding up the accounts of the firm will be diminished, and that he should therefore be required to release his interest in that surplus, at least so far as it may be affected by the sum in controversy. He is supposed, without such release, to be still testifying in favor of a fund in which he is interested. I have thought a good deal of that, on different occasions, but never could see how the witness' partnership balance was to be affected, after the defendants, by their release to him, had cut off all claim to contribution either for damages or costs. Surely they can never afterwards make any charge which shall diminish his interest in any way. Can the plaintiffs proceed by execution against the partnership fund in his possession ? According to our own decisions, and what fell from the king's bench in *Wilson* v. *Hirst,* there is an end of the partnership claim, as such, be the recovery which way it will. The plaintiff has individualized the debt. To be sure, he may levy on the common property ; but I take it this must be like any other levy upon an execution against A. on the goods of A. and B., copartners. It stands subject to an account between A. and B., when the share of A. alone after firm debts paid is made available. Such a consequence is no argument for shutting out the copartner of A. as interested. His oath is directed, not to the protection of his own, but A.'s interest only.

In the case at bar, if mutual releases were necessary, there may be some question whether that executed by Sand-

ford was so worded as to reach and cut off his *surplus;* but I cannot bring myself to think that a release from him was necessary. An additional reason, if any be requisite, is as stated by Sandford on his *voir dire,* that no property was left to the firm which was tangible to a legal execution; and it is clear that the choses in action of the firm could not be reached by a creditor's bill beyond the defendant's separate interest subject to an account.

There is however, I think, no reason for revising the doctrine of *Bagley* v. *Osborne,* and adding the release from the witness. That which he received here was sufficient in form; it simply discharged him from all contribution, and in legal effect therefore, threw the whole suit upon the shoulders of the defendants. The referees evidently proceeded on the notion, as it formerly stood in the English books, of the witness' ultimate liability on his copartner's death or insolvency. In this we think they erred.

The report must, therefore, be set aside, and the cause be reheard by the same referees, the costs to abide the event.