## JACKSON *v.* SESSIONS

CONTRACT—MUTUALITY.

An assignment by sub-vendees of their rights in a contract for the purchase of timber is, as between the assignee and the original vendor, void for want of mutuality, where the assignee assumes no liabilities under the contract, and no consideration passes from him to the vendor therein.

Error to Muskegon; Russell, J. Submitted January 17, 1896. Decided May 12, 1896.

*Assumpsit* by Charles H. Jackson against Clarence W. Sessions for the breach of a contract for the sale of timber. From a judgment for defendant on demurrer to the declaration, plaintiff brings error. Affirmed.

*C. W. Perry*, for appellant.

*Sessions, Niskern & Bassett*, for appellee.

MOORE, J. In the court below, plaintiff filed a declaration which may be summarized as follows: That defendant was owner and possessor, as trustee, of certain lands in Clare county, a description of which is given, together with the hemlock timber thereon, amounting to 18,000,000 feet; that said defendant, as trustee, prior to November 7, 1891, sold said lands and hemlock timber to James Davison and Rose P. Gardiner for $1 per 1,000 feet, log measure, to be paid by the said Davison & Gardiner, and their assigns, as fast as such timber should be cut; that while such contract was in force, and said parties were then acting under it, Davison & Gardiner entered into a contract in writing (which is set forth in full) "to sell, and do sell, to said second parties, all the merchantable hemlock timber on the following described lands" (the

description then follows), to Aaron P. Bliss and Willis G. Van Auken, for a price and on terms therein named, which said Bliss & Van Auken then agreed to pay, and that it was agreed that Bliss & Van Auken should retain out of the purchase price $1 per 1,000 feet, and pay the same direct to the defendant, to apply on the contract between said Sessions and said Davison & Gardiner; that at the making of said contract the defendant consented to said contract, so far as the same related to the timber held under contract of purchase from him by said Davison & Gardiner, and agreed, for a valuable consideration, that, in case Davison & Gardiner should make default, said Bliss & Van Auken should be permitted to cut and remove the timber, and consider the same as sold direct to them, upon payment to the defendant of $1 per 1,000 feet for all timber so to be cut and removed, to be paid within 30 days after demand therefor, and notice of default on the part of Davison & Gardiner; that on the 2d day of August, 1892, the plaintiff purchased, for a valuable consideration, from the said Bliss & Van Auken, said contract, and all rights, title, and interest of Bliss & Van Auken in and under said contract, together with the said consent and agreement of said Sessions attached thereto; that said defendant had full notice, before the assignment, of the intention of plaintiff to purchase of said Bliss & Van Auken, and not only made no objection thereto, but advised plaintiff to make such purchase, and led plaintiff to believe, and plaintiff did believe, that Sessions assented to such contract of assignment from Bliss & Van Auken, together with such supplemental consent and agreement, and without such assent plaintiff would not have purchased said contract; that Bliss & Van Auken performed said contract, in all things, up to the date of such assignment, "and were then and there entitled of right to go upon said lands, and to cut and remove the said hemlock timber thereon, upon payment to the said Sessions of $1 per 1,000 feet within 30 days after demand therefor;" that said contract, since the said assignment, has been

fully carried out by plaintiff for said Bliss & Van Auken, and in their place, so far as allowed by said defendant, and plaintiff has at all times been ready and willing to carry out said contract; that on September 1, 1892, Davison & Gardiner made default in their said contract; that on said 1st day of September, 1892, the plaintiff gave defendant notice that he was the owner of said contract, and the consent and agreement of defendant attached thereto, by assignment, and that he claimed the right to cut and remove the timber according to said contract, and the assent and agreement of said defendant, upon payment to defendant of $1 per 1,000 feet; that defendant refused to allow plaintiff to go upon said lands and cut and remove such timber, and prevented plaintiff from so doing, and sold said timber to other parties, in consequence of which the plaintiff was damaged to the amount such timber was worth, for the purpose of cutting and manufacturing, above the $1 per 1,000 feet to be paid to the defendant.

This declaration was demurred to for the following reasons, in substance: That the agreement between the defendant and Bliss & Van Auken, and the agreement between plaintiff and defendant, are void for want of mutuality; that the contract between Davison & Gardiner and Bliss & Van Auken is not assignable; that the supplemental agreement between defendant and Bliss & Van Auken is not assignable; that the right of Bliss & Van Auken to enter on such land and cut and remove such timber was dependent upon the default of Davison & Gardiner, and upon the payment of $1 per 1,000 feet as a condition precedent to such cutting and removing, and that payment or tender is not alleged; that the right of Bliss & Van Auken under said agreement with defendant was a mere license to enter upon said land and cut and remove such timber, and was not coupled with an interest in the subject-matter, and was revocable at pleasure, and had been revoked; that, if there be any agreement between plaintiff and defendant, it rests in parol, and is void

under the statute of frauds; that the damages claimed are too uncertain, inconsistent, conjectural, and speculative to permit any recovery.

The circuit judge sustained the demurrer.   His action is sought to be reviewed in this proceeding.

The contract from Sessions to Davison & Gardiner is referred to in the declaration, and a copy of it is attached to the demurrer.   Those portions of it that are important in this discussion read:

"Said first party agrees to sell to said second parties all the merchantable timber, of every kind and description," on certain premises (describing them).

"Said second parties agree to pay for the timber" (describing the amount and manner of payment).

"It is further agreed by and between the parties hereto that said second parties shall have the privilege of entering upon said land" to cut and remove the timber, upon certain conditions.

"Before removing the timber, or the product manufactured from the same, they shall pay the following sums of money."   And the amounts and manner of payment are then stated.

Then comes this provision:   "The title to said timber, logs, lumber, and shingles to remain in said first party until paid for as above."

Davison & Gardiner had the right "to sell the timber upon payment to said party of the first part of such a sum of money as shall be reasonable, and shall be agreed upon by and between the parties."   They were to pay one-half the taxes, and perform other conditions stated in the contract, and it was agreed "that, upon the full and complete performance of the covenants and conditions herein contained,   *   *   *   said first party shall execute to said second parties a good and sufficient deed of said timber;" but, in case Davison & Gardiner did not perform their agreement, it was provided "that the first party may, at his option, declare this contract void."

The agreement between Davison & Gardiner and Bliss

& Van Auken was, in effect, that the former would sell, and did sell, to the latter, all the merchantable timber mentioned in the contract between Sessions and Davison & Gardiner. Bliss & Van Auken agreed to buy said timber, and the contract stated the method of manufacture, the times and terms of payment.

At the time of the delivery of this contract there was indorsed upon it in writing, by Sessions, as follows:

"I consent to the making of said contract by the parties hereto, so far as the same relates to the timber held under said contract of purchase from me by Davison & Gardiner: *Provided*, however, that nothing herein shall be deemed a waiver of all rights secured to me in and by said contract of purchase, or an extension or modification of the terms of said contract. In consideration of $1 to me paid, the receipt of which is acknowledged, I further agree that in case said Davison & Gardiner shall make default in said contract of purchase from me, and shall fail to carry out the same, then said Bliss & Van Auken shall be permitted to cut and remove the timber mentioned in the foregoing contract as having been sold by me, upon the payment to me of $1 per 1,000 feet, so to be cut and removed, which payment shall be in accordance with the terms of said contract of purchase by said Davison & Gardiner from me, except as modified above as to price, and shall be made within thirty (30) days after demand therefor, and notice of default on the part of said Davison & Gardiner, as aforesaid."

The only writing which passed between Bliss & Van Auken and Jackson reads as follows:

"SAGINAW, MICH., August, 1892.

"For a valuable consideration, viz., $687.53, to us in hand paid by C. H. Jackson, of Baldwin, of Lake county, Michigan, we transfer, sell, set over, and assign to said C. H. Jackson any and all rights that we may have in and to a certain contract, dated November 7, 1891, made by Davison & Gardiner, of Farwell, Mich., of the first parties, and ourselves, of the second parties; said contract being also approved and consented to by Clarence W. Sessions, trustee. We assume no responsi-

bility in making this transfer, and Mr. Jackson takes this for what he may recover hereunder.

"BLISS & VAN AUKEN,

"By W. G. Van Auken."

No writing passed between Sessions and Jackson.

It is claimed that the consent of Sessions did not amount to an agreement, but was a revocable license, as Bliss & Van Auken did not agree, in case of the default of Davison & Gardiner, to take their places, or to make any payments, and that it must fail for want of mutuality. It is not necessary, in this case, to determine that question, and we express no opinion upon that point.

All that Bliss & Van Auken assigned to Jackson was this contract with Davison & Gardiner. There is no claim that Sessions assented in writing to the assignment of the Bliss & Van Auken contract to Jackson, or that anything was paid to him, as a consideration therefor, by Jackson. Jackson did not agree with Davison & Gardiner to take any of the logs or timber, nor with Bliss & Van Auken that he would take their place in the Davison & Gardiner contract; nor did he agree with Sessions that, if Davison & Gardiner defaulted in their contract, he would go on and take their place and make the payments; nor did he tender an agreement in writing to do any of these things. Neither did he tender any payment for the timber. If, after he procured the assignment from Bliss & Van Auken, Jackson had done nothing, he would have incurred no liability. Neither Davison & Gardiner nor Sessions had any legal claim against him. The timber never has been paid for. Davison & Gardiner have defaulted. No one is so related to them in the Sessions contract that he can enforce it against any one but them. It would be a strange legal proposition to say that a contract which might result in acquiring title to a large amount of timber could rest in parol, be created without any consideration passing between the parties to it, and that it need not have two parties, and yet could be enforced. Giving the fullest effect to what Jackson

claims occurred between him and Sessions, it does not establish a contract that could be enforced. It fails for want of mutuality. In Clark, Cont. p. 523, it is stated:

" A contract cannot affect any but the parties to it, either by imposing liabilities or conferring rights on them. The original parties to a contract, however, may, under certain circumstances, drop out, and others may take their places. In this way the contractual obligation does pass to persons who were strangers to the contract when originally made; and this would, at first thought, seem to furnish an exception to the rule we have been discussing. The exception, however, is only apparent, for the persons so affected do actually become parties to the contract, either by their own voluntary consent, or by operation of law; and even the law does not confer rights or impose liabilities without the consent of the parties, or at least without voluntary acts on their part which prevent their refusing consent. The operation by which this change in the contractual relation is effected is termed an 'assignment of the contract.' * * * It is the settled rule, subject to exceptions which are apparent rather than real, that a person cannot assign his liabilities under a contract, or, to put the matter from the point of view of the other party to the contract, a person cannot be compelled to accept performance of a contract from a person who was not originally a party to it. The reason for the rule lies, not only in the right of a person to know to whom he is to look for the satisfaction of his rights under a contract, but more particularly in his right to the benefit which he contemplates from the character, credit, and substance of the person with whom he has contracted. *Humble* v. *Hunter*, 12 Q. B. 310; *Arkansas Val. Smelting Co.* v. *Belden Min. Co.*, 127 U. S. 379; *Chapin* v. *Longworth*, 31 Ohio St. 421; *Rappleye* v. *Seeder Co.*, 79 Iowa, 220; *Burger* v. *Rice*, 3 Ind. 125; *Bethlehem* v. *Annis*, 40 N. H. 34 (77 Am. Dec. 700); *Lansden* v. *McCarthy*, 45 Mo. 106; *Donelson* v. *Polk*, 64 Md. 501; *Stewart* v. *Railroad Co.*, 102 N. Y. 601 (55 Am. Rep. 844), and cases there cited."

In *Davie* v. *Mining Co.*, 93 Mich. 496, it is said: "Contracts cannot arise where there is no mutuality; nor can they arise from the action of one party alone, where the other has no power to prevent his action." See *Mc-*

*Donald* v. *Bewick*, 51 Mich. 79, and cases there cited; *Richardson* v. *Hardwick*, 106 U. S. 255; *Utica & Schenectady R. Co.* v. *Brinckerhoff*, 21 Wend. 138 (34 Am. Dec. 220).

It is not necessary to discuss the other questions presented by the demurrer.

The case is affirmed, with costs.

The other Justices concurred.