APPEAL from the decree of the Register of Wills for New Castle County, admitting to probate the will of Mary Russell deceased. The depositions taken on the hearing before him and sent up with the will, were read to the court from which it appeared that the principal question of fact raised before him related to the mental condition and capacity of the testatrix to make a will at the time of executing it, but the preponderance of the testimony appeared to be decidedly in favor of her capacity.
G. B. Rodney for the appellant. The first question was *Page 104 
as to the factum of the will. Benjamin Caulk one of the testamentary witnesses, does not depose that he saw the testatrix sign the will. His testimony simply is that he did not remember the fact that Mary Russell subscribed her name to the will in his presence. He should say Mary Russell's name was subscribed to the paper before he attested it. He had no doubt her name was signed to it before he attested it, and he afterward says she acknowledged this paper to be her will at the time of requesting him to attest it and before he attested it. But that was not sufficient, for the attesting witness must either see the testator sign the will, or hear him acknowledge the signature to the will to be his signature. An acknowledgment that it is his will merely, is not sufficient. Stonehouse v. Evellyn,
3 Pr. Wms. 251. Rob. on Wills. 131 to 136. Ellis v.Smith, 1 Vez. Jr. 11. Addy v. Dix, 8 Vez. Jr.
504. Lewis v. Lewis, 13 Barb. 17. 11 Kin. Comp. 353.Wright v. Price, 1 Doug. 244 in note. Gray son v.Atkinson, 2 Vez. 455. And the plain and obvious meaning and proper construction of the provision of our statute on the subject requires that when the testamentary witness cannot say that he saw the testator sign his name to the will, but only heard his acknowledgment, it must be an acknowledgment of his signature as subscribed to it, and not simply that such a paper is his will, because it is the signature, which above every thing else, makes it his will, and without which no acknowledgment could make it his will, for it is not the paper writing simply which constitutes the will. Rev. Code, 272, sec. 3. Their second objection to the will was that the persons who had attested and signed it as such, were incompetent testamentary witnesses to it, because they were pew-holders in the Presbyterian church at Newark, and as such, were contributors to the support of the pastor of it, and to which there was a bequest of a legacy in the will for the support of the minister of it. The fourth section of our statute in regard to wills specially provides what persons or parties taking a beneficial interest under a will, shall be competent to sign it as testamentary witnesses, and of course, by necessary implication it *Page 105 
excludes all others who are to take any pecuniary benefit whatever under it, and these witnesses were of the latter class, and were necessarily excluded for that reason, from becoming testamentary witnesses to it. Rev. Code 272, sec. 4. Rob. onWills, 154. Nor was it the amount of the interest or benefit to be derived from it, whether it would be much or little, that would in any manner affect the question, or qualify the rigid rule of exclusion in such a case. He was aware what would be the reply to this on the other side, that the pew rents referred to were but voluntary contributions paid by these witnesses and appropriated to the support of the minister of the church, and as such, their holding such pews and the benefit they would thereby derive from the legacy, would not constitute such an interest in contemplation of law, as would disqualify them |and forbid their becoming testamentary witnesses to the will. But they were not merely voluntary contributions, for as long as a pew-holder retains his pew, he is bound to pay the rent for it; and the general rule or principle of evidence applicable in such cases, is, that whenever a fact is to be proved by a witness and such fact will be favorable to the party who calls him, and the witness will derive a certain advantage from establishing the fact in the way proposed, he cannot be heard, whether the benefit be great or small.Marguand v. Webb, 16 Johns. 93. The depositions distinctly prove the fact on which the next objection will be founded, and that is that the will was drawn by the Rev. Mr. Vallandingham who not only takes a legacy under it, but he is also the minister of the Presbyterian Church in Newark to which the legacy before mentioned, is given, and was at the time, the spiritual adviser and pastor of the testatrix; and where a person holding such an intimate and confidential relation to the testatrix, draws the will and takes a benefit or bequest under it, the books and authorities on the subject all regard it as a suspicious circumstance to require stricter scrutiny and stronger evidence of free and spontaneous volition and mental capacity on the part of the testator at the time of making it, and *Page 106 
in a case of doubtful or questionable capacity, the proof must be such as to afford full and entire satisfaction to the mind of the court that the testator was not imposed upon, but knew what he was doing, and the dispositions contained in the will when he made it. 1 Jarm.on Wills, 40, 44, Ingraham v. Wyatt, 3 Eccl. Rep. 170, 204. Shelf. on Luna. 2 Law Libr. 201, 203. The fourth and last objection he should take was, that at the time of making the will, she was the owner of a farm of considerable value and which with a small lot of ground owned in Newark, constituted the whole of her real estate, and which she afterward sold and conveyed to the purchaser some time before her death; and that by implication of law, operated as a revocation of her will, notwithstanding it contained a clause providing for the sale of the farm after her death under the will, and the application of the money arising therefrom to the payment of the legacies bequeathed in the will. There was, however, one other rule of law which he should notice before concluding, and that was that in every case like this, the onus probandi rested upon the party propounding the will, and he was bound to satisfy the conscience of the Court that the instrument propounded was the will of one capable of making it, and who was free at the time to make a final disposition of all her property in such a manner according to her own will and pleasure.
D. M. Bates, for the respondent. The proof that the testatrix signed the will in the presence of the two attesting witnesses was sufficient, because one of them, Mr. Wilson, expressly deposes that she did sign it in the presence of both of them, and before they signed it as witnesses, whilst Mr. Caulk, the other witness to it, does not depose that she did not sign it in his presence, but only that he did not then remember that she did it. And upon that point such testimony was sufficient to prove that fact. Redf. onWills, 217, 218. 10 Paige 91. But it was now well and definitively settled that an acknowledgment simply by the testator in the presence of the attesting witnesses that it is his will, *Page 107 
was itself sufficient, without their either seeing him sign it, or hearing him acknowledge that the signature to it was his signature.Ellis v. Smith, 1 Vez. Jr. 11. White v. Trustees Eng.Museum, 19 E. C. L. R. 91. Hall v. Hall, 17 Pick.373. Dewey v. Dewey, 1 Metc. 394. The persons already mentioned, Mr. Caulk and Mr. Wilson, were also competent testamentary witnesses to the will, because they were under no legal liability to contribute to the pay or support of the minister of the church alluded to. The interest to disqualify a person from becoming such a witness, must be a legal interest, and in such a case as this, there must have been a legal liability on the part of these witnesses and pew-holders in the church referred to, to contribute to the support or pay of the minister of it; and yet, even if they had been under such a legal liability to contribute to his pay or support, it would not have constituted a disqualifying interest in contemplation of law, because it was too remote and contingent in its character to be so. Mod.Prob. of Wills, 493. Mason v. Thatcher, 7 Mass. 398.Hawes v. Humphrey, 9 Pick. 350. Besides, the church which was to be immediately benefited by the legacy, was a corporation under our statute in relation to religious societies, and in a suit by the trustees of it to recover the legacy, these gentlemen as pew-holders in it and members of the congregation, would even in such a case, be competent witnesses for it. Rev. Code 381, sec. 2,Ang. Ames on Corp. sec. 652. And if that was so, there certainly could not be any pretext for saying that they were incompetent testamentary witnesses to prove the will before the Register by reason of any such indirect and incidental benefit which as mere pew-holders in the church, they may possibly derive from it. As to the third objection on the ground that the sale of the farm after the making of the will operated as an implied revocation of it, that was a question which could not be raised or inquired into in a proceeding merely to probate the will. 1 Jarm. on Wills, 172, in note. Redf. onWills, 339. Hawes v. Humphrey, 9 Pick. 350. There was, however, no devise in the will of the farm, but simply a *Page 108 
direction that it should be sold, and the proceeds applied as stated. And now, as to the final objection made to the will, that it was drawn by a person who stood in the peculiar and confidential relation to the testatrix which had been mentioned, and who takes a benefit under it, the principle on which it rested could only apply in cases in which it appears that the testator was at the time of making the will, of questionable and doubtful testamentary capacity, as where it is proved that he was deaf, or blind, or ignorant, or otherwise of doubtful capacity. But there had been no such proof whatever in this case, and although an apparently feeble effort had been made, it had entirely failed to raise a doubt in the mind of any one who will read the depositions, as to the mental capacity of the testatrix to make this will when it was executed by her, and there was therefore no ground for any such objection, and, of course, no ground for the application of any such principle to it.
Rodney replied.
The Court affirmed the decree of the Register allowing the will, on all the points made and discussed by counsel in the argument of the case.